UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-11-0625 EMC |
|         Plaintiff, | |
|     v. | **FINAL PRETRIAL CONFERENCE ORDER** |
| BASSAM YACOUB SALMAN, a/k/a Bassam Jacob Salman | |
|         Defendant. | |
| _____/ | |

## I.   TRIAL DATE & LENGTH OF TRIAL

Jury selection and trial shall commence on September 16, 2013, at 8:30 a.m.  Trial days shall last from 8:30 a.m. to 4:30 p.m. on September 16, 17, 20, 23, 27, and from 8:30 a.m. to 2:00 p.m. on all other trial days.  The Court may determine that additional full trial days are necessary as the trial progresses.  Trial is dark on Thursdays, absent further order.

## II.   PROCEDURE FOR EXHIBITS AT/DURING TRIAL

A.   No later than the end of each trial day, counsel shall inform opposing counsel of which exhibits (including demonstrative evidence), if any, he or she intends to introduce during the next trial day and, if necessary, with respect to which sponsoring witness.  If any such exhibits are still objected to, both counsel shall notify the Court after the jury is excused for the day and shall identify the exhibits at issue and the objections.  The Court will then schedule a conference that afternoon or the following morning to resolve the dispute.

B.  At the end of each trial day, counsel shall also provide opposing counsel with a tentative preview of the exhibits he or she intends to introduce during the trial day after next. Parties are directed to make a good faith effort to ensure such previews are as accurate as possible.

C.  With respect to exhibits to be used on the first day of trial, counsel shall inform opposing counsel of which exhibits, if any, he or she intends to introduce by Thursday, September 12, 2013, at 5:00 p.m. If any such exhibits are still objected to, both counsel shall notify the Court by September 13, 2013, at 2:00 p.m., and shall identify the exhibits at issue and the objections. The Court will then address the dispute on the first day of trial, September 16, 2013, before any testimony begins.

D.  If a party intends to use a projector or other equipment to show an exhibit (or demonstrative) to the jury, that equipment shall be set up and ready for use by 8:30 a.m. each day. The parties should immediately file with the Court, if necessary, administrative requests to bring projectors and/or other equipment to the courthouse for use at trial.

### III.  PROCEDURE FOR WITNESSES AT/DURING TRIAL

A.  Each party shall be prepared, during its case in chief or any rebuttal, to present its next witness. At any time, if the party whose case is being presented is not prepared to present its next witness, that party shall be deemed to have rested that portion of its case. No further witnesses shall be permitted by the party who has so rested in that portion of the case (*e.g.*, case in chief or rebuttal).

B.  Counsel are expected to cooperate with each other in the scheduling and production of witnesses, including informing one another of witness order. At the end of each trial day, Counsel shall give opposing counsel notice of which witnesses will be testifying on the following day. At that time, counsel shall also provide a tentative preview of witnesses who are expected to testify the day after next. Witnesses may be taken out of order if necessary. Every effort shall be made to avoid calling a witness twice (as an adverse witness and later as a party's witness).

C.  Only one lawyer for each party may examine any single witness.

2

D.   If a witness is testifying at the time of a recess or adjournment and has not been excused, the witness shall be seated back on the stand when the Court reconvenes. If a new witness is to be called immediately following recess or adjournment, the witness should be seated in the front row, ready to be sworn in.

E.   Counsel shall refrain from eliciting testimony regarding any undisputed facts as set forth in any stipulation filed with the Court. The Court may read to the jury such undisputed facts at appropriate points in the trial.

F.   Witnesses shall be excluded from the courtroom until completion of their testimony.

## IV.   OTHER PROCEDURES AT TRIAL

A.   To make an objection, counsel shall rise, say "objection," and briefly state the legal ground (*e.g.*, hearsay or irrelevant). There shall be no speaking objections or argument from either counsel unless requested by the Court.

B.   Bench conferences, or the equivalent of sidebars, will not be permitted absent truly extenuating circumstances. Disputes regarding exhibits shall be resolved as set forth in Part II, *supra*. Any other disputes or problems should be addressed either before the trial day commences, at the end of the trial day, or during a recess, if necessary.

## V.   GOVERNMENT'S MOTIONS IN LIMINE

A.   Motion in Limine No. 1:  Reciprocal Disclosures

    The government has filed a motion in limine seeking to compel Defendant to provide reciprocal disclosures under Federal Rule of Criminal Procedure 16(b) and the Jencks Act, or, in the alternative, to preclude Defendant from relying on any undisclosed responsive evidence in his case-in-chief. Docket No. 62. Defendant does not oppose this motion, nor does he dispute that he has not yet disclosed any such evidence. Docket No. 148. He indicates that he intends to evaluate and comply with his obligation after the close of the government's case at trial. At the pre-trial conference, the government indicated that it was particularly concerned about any documents relating to the business relationship between Defendant and Mr. Bayyouk that would provide an alternative explanation for funds that were transferred between accounts held by the two men.

1  Defendant represented that he had no documents that would currently be subject to production in
2  response to this request or otherwise.

3      The government's motion in limine is therefore **GRANTED.**  In order to provide the
4  government with adequate advance notice of any evidence the defense intends to introduce at trial,
5  Defendant is ordered to make all disclosures consistent with his Rule 16(b) and *Jencks* obligations
6  by no later than September 4, 2013.  Failure to comply will subject any covered
7  documents/objects/reports to exclusion.

8  B.      Motion in Limine No. 2:  Contemporaneous Trading by Other Tippees

9      The government files a motion in limine seeking to admit evidence of securities trading by
10 Joseph Azar and Nassar Mardini contemporaneous with trades made by Defendant.  Docket No. 63.
11 Specifically, the government seeks to admit the testimony of these individuals regarding
12 conversations they had with Michael Kara, the same person who is alleged to have passed insider
13 information to Defendant; and business records relating to their trading activities and telephone
14 conversations.  The government contends that this evidence is relevant to show that the information
15 in question was non-public, to show that the information was material to Defendant's trading
16 decisions, and to corroborate the credibility of Michael Kara, who is a key witness in this case.
17 Defendant opposes, arguing that this evidence should be excluded under F.R.E. 403.  Docket No.
18 149.

19     Defendant argues that even if the evidence of contemporaneous trading by Mr. Azar and Mr.
20 Mardini is relevant to the issue of whether the information Kara told Defendant was non-public and
21 material to Defendant's trading decisions, the government has other evidence on this question that is
22 more probative in the form of witnesses from Citigroup, the testimony of Mr. Kara, and other
23 witnesses with knowledge of the companies whose securities were the subject of the trades.
24 Defendant argues that on this point, therefore, the testimony of Mr. Azar and Mr. Mardini is simply
25 cumulative, and should thus be excluded as a waste of the jury's time.

26     Defendant also argues that the testimony of Mr. Azar and Mr. Mardini is of little or no
27 relevance to corroborating Mr. Kara's testimony.  Defendant has previously indicated that a key
28 issue in his defense is whether Defendant knew that the information Mr. Kara gave him was non-

public, and that he intends to impeach Mr. Kara's credibility as a witness on this front. On this motion, the government indicates that it expects Mr. Azar and Mr. Mardini to testify that Mr. Kara told them that the information he gave them was not public. Defendant argues that any such testimony is irrelevant, the fact that Mr. Kara told Mr. Azar and Mr. Mardini that the information was non-public does not necessarily indicate that he said the same to Defendant. Defendant specifically points to the (apparently undisputed) fact that Mr. Kara did *not* tell two other alleged tippees in the insider trading scheme, Emile Jilwan and Zahi Haddad, that the information he gave them was confidential. Defendant thus argues that the government's intention to rely on the testimony of Mr. Azar and Mr. Mardini to establish that Mr. Kara had a pattern of informing tippees about the confidential nature of the information provides the jury with a selective and misleading story.

The Court is unconvinced by Defendant's arguments. It finds that the testimony of Mr. Azar and Mr. Mardini is relevant to the issue of whether the information Defendant received from Mr. Kara was non-public and material, and that at this stage it cannot be said that this testimony is so cumulative of the over evidence on this point as to justify exclusion under F.R.E. 403. Further, the Court finds the testimony of these witnesses relevant to the question of Mr. Kara's credibility, and whether Mr. Kara informed Defendant of the non-public nature of the information in question. *See United States v. Contorinis*, 692 F.3d 136, 144-5 (2d Cir. 2012) (affirming district court's rejection of F.R.E. 403 challenge to evidence of the activities of parallel tippees, and finding such evidence was relevant to corroborate the testimony of the tipper, whose credibility the defendant challenged). Evidence corroborating Mr. Kara's testimony on this issue is particularly critical given Defendant's intention to sharply dispute Mr. Kara's credibility as a witness. The fact that other tippees were unaware of the confidential nature of the information may also be relevant on this issue, and should Defendant wish to introduce evidence on this front he may do so. The fact that there is evidence on this question that could give rise to competing inferences about what Mr. Kara told Defendant does not render the testimony of Mr. Azar and Mr. Mardini irrelevant or inadmissible. The probative value of this testimony is not outweighed by any danger of prejudice.

The government's second motion in limine is therefore **GRANTED**.

C.    Motion in Limine No. 3:  Bayyouk's False Statements to the SEC

The government's third motion in limine seeks admission of evidence of several false statements that Karim Bayyouk made to the Securities and Exchange Commission.  Docket No. 65. Mr. Bayyouk, Defendant's alleged co-conspirator, made statements during a telephone interview on May 31, 2007 in connection with an SEC investigation into insider trading of securities issued by Biosite, Incorporated.  Among other statements, Mr. Bayyouk falsely stated that he had not discussed Biosite with anyone before making the relevant trades, and falsely stated that he did not know anyone named "Maher Cara."  Maher Kara is another alleged co-conspirator in this case.

Defendant objects to the admissibility of these statements, arguing that (1) they are inadmissible hearsay; (2) their admission would violate his Confrontation Clause rights; and (3) they are more prejudicial than probative.  Docket No. 150.

The government argues that it is not introducing these statements for the truth of the matter asserted, but simply to show that Mr. Bayyouk made the statements.  The government will introduce other evidence to prove the falsity of Mr. Bayyouk's statements; from this the jury can infer Mr. Bayyouk's knowledge that the trades were performed based on insider information.  This, in turn, supports an inference that Defendant was also aware that the information was not public.  Since the statements are not offered for the truth of the matter asserted, they do not fall within the hearsay rule.

Defendant further argues that admitting the statements identified by the government would necessarily include allowing other statements Mr. Bayyouk made to the SEC, some of which may be offered for the truth of the matter asserted.  Defendant offers as examples that Mr. Bayyouk also made statements to the SEC about his telephone number, his business interests and family relationships.  Docket No. 150 at 3 n.1.  In its reply, the government indicated a willingness to redact "all the statements that are not false" from the transcript.  Docket No. 167.[1]

---

[1] The government also maintains in a footnote that such statements would nevertheless be admissible as co-conspirator statements in furtherance of the conspiracy because they were made in an attempt to obstruct the SEC's investigation into the insider trading scheme.  As the government is redacting all true statements from the transcript, this Court need not determine the applicability of the co-conspirator exception here.

1   Defendant next argues that admission of the statements Mr. Bayyouk made to the SEC would

2   violate his Confrontation Clause rights because Mr. Bayyouk, who is currently facing obstruction of

3   justice charges, is unavailable for cross examination.  The Confrontation Clause of the Sixth

4   Amendment provides that in criminal cases the accused has the right to "be confronted with the

5   witnesses against him."  U.S. Const. amend. VI.  The right of confrontation includes a right to

6   cross-examine witnesses.

7        The Ninth Circuit considered the application of the Confrontation Clause to an analogous

8   situation in *United States v. Hackett*, 638 F.2d 1179 (9th Cir. 1980).  In that case, the government

9   had introduced evidence at trial of false statements the defendant's co-conspirator had made to the

10  police shortly before his arrest.  *Id.* at 1186.  The co-conspirator had falsely stated that he had never

11  been to the defendant's house, that he did not know who lived in the house, and that he had just

12  come from a nearby yacht club, when in fact he had just been in the defendant's house helping him

13  to dispose of evidence of the crime.  *Id.*  The defendant argued that his Confrontation Clause rights

14  were violated when the government introduced the testimony of the officer to whom the co-

15  conspirator had made the statement, but where the co-conspirator was not himself available for

16  cross-examination.  The court rejected this argument:

            Here, however, Turner's [the co-conspirator's] statements were
            admitted not for their truth, but merely for the fact that the statements
            were made. . . .  Combined with other evidence showing Turner's
            statements to be false, the mere fact that Turner made them implied his
            consciousness of guilt.  The agent who recounted Turner's statements
            was available for cross-examination on whether Turner in fact made
            them.  Thus, cross-examination of Turner was not necessary to protect
            [the defendant's] confrontation right on the question whether Turner in
            fact made the statements.

22  *Id.* at 1186-87 (internal citations omitted).  The Ninth Circuit has recently reaffirmed that "even

23  testimonial statements may be admitted without confrontation if they are offered 'for purposes other

24  than establishing the truth of the matter asserted' and, therefore, constitute nonhearsay."  *United*

25  *States v. Orm Hieng*, 679 F.3d 1131, 1141 (9th Cir. 2012) (citing *Crawford v. Washington*, 541 U.S.

26  36, 59 n.9 (2004)) cert. denied, 133 S. Ct. 775 (U.S. 2012).  The Confrontation Clause thus does not

27  require exclusion of evidence of Mr. Bayyouk's false statement to the SEC, which are not offered

28

for the truth of the matter asserted. In fact, they are offered to show the untruth of the statements as an indication of Mr. Bayyouk's state of mind.

Finally, Defendant argues that Mr. Bayyouk's statements should be excluded under F.R.E. 403 because the probative value of his statements is substantially outweighed by the danger of unfair prejudice. Defendant argues that without the opportunity to cross-examine Mr. Bayyouk, he will be unable to inquire into alternative explanations for why Mr. Bayyouk made the statements in question. Docket No. 150 at 5. Defendant argues that without the opportunity to explore alternative reasons for Mr. Bayyouk's statements, the jury may erroneously draw the inference that Mr. Bayyouk lied because he knew (because Defendant had told him) that the trades he executed on Defendant's behalf were based on inside information, even if there is some other explanation.

Defendant's argument on this front, however, only serves to underscore the probative value of the evidence the government seeks to introduce. The question of whether Defendant knew that the information he received from Mr. Kara was inside information is one of the central disputed issues in this trial. To the degree that Mr. Bayyouk's false statements indicate that he was aware that the trades Defendant asked him to make were based on inside information, this would be probative of Defendant's knowledge of same. Further, Defendant may be able to explore at least some alternative explanations for Mr. Bayyouk's statements even without cross examining Mr. Bayyouk directly. For example, the transcript of the interview itself may contain indications as to whether Mr. Bayyouk misunderstood the nature of the questions he was being asked. Additionally, as Defendant and Mr. Bayyouk are brothers-in-law and have participated in various joint business ventures, Defendant may well have knowledge of any other motive Mr. Bayyouk would have to lie to the SEC, and may introduce such evidence. Given the high probative value of this evidence, and the mild risk of unfair prejudice, this Court finds that exclusion is not justified under F.R.E. 403.

The government's third motion in limine is therefore **GRANTED**. The government, however, shall redact any true statements from the transcript of this interview.

D.    Motion in Limine No. 4:  Summary Charts

The government's fourth motion in limine seeks admission of five summary charts:  Trial Exhibits 2, 78, 82, 87, and 92. Docket No. 70. These exhibits were prepared by an FBI Special

Agent, and summarize some of the bank, brokerage, and telephone records in this case. The government will also seek admission of the underlying business records.

Defendant does not object to the use of accurate summary charts as demonstratives at trial, but objects to their introduction as evidence. Docket No. 152. Pursuant to F.R.E. 1006, "[t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." The charts in question here each summarize no less than 1,000 pages of records, a number that would be cumbersome and unrealistic for the jury to review in a meaningful way. Additionally, some of the charts summarize information from multiple sources, such as the dates that Bayyouk, Salman, and Defendant each first traded in various securities. Gov. Ex. 87. It would be quite difficult and time consuming for the jury to synthesize this information on its own. The Court thus overrules Defendant's general objections to the admission of summary charts. In order to allow the jury to cross reference the summary charts with the underlying documents, however, the Court directs the government to clearly indicate on each summary chart given to the jury the exhibit number of the underlying documents.

Defendant additionally raises specific objections to all of the charts except Exhibit 87 as they are currently formulated, arguing that as they are more prejudicial than probative.

1.    Objections to Exhibits 2 and 92

Exhibit 2 is a chart listing all of the companies for which Michael Kara purchased stock between January 2004 and December 2007, and providing the date of first trade for each company. Exhibit 92 traces cash flows between Mr. Bayyouk's Comerica securities brokerage account and accounts held by both Mr. Bayyouk and Defendant. The government indicates that the latter chart is offered to establish that Defendant had an interest in Mr. Bayyouk's securities account, as it intends to prove that Defendant had Mr. Bayyouk execute trades on his behalf. Defendant does not challenge the accuracy of the information contained in either of these charts. Rather, he argues that taken together, they are unfairly prejudicial because Exhibit 92 contains dollar amounts for the cash transfers which would lead the jury to believe that Defendant is wealthy (the transfer amounts with

Defendant's accounts range from approximately $14,000 to $300,000), while Exhibit 2 does not contain dollar amounts pertaining to the trades made by Mr. Kara.

As these charts are offered for entirely different purposes, this Court rejects Defendant's suggestion he is prejudiced by the fact that one offers dollar amounts for certain transactions while the other does not. Further, the Court rejects Defendant's argument that he is unfairly prejudiced by the fact that Exhibit 92 contains dollar amounts indicating that large sums of money were transferred between accounts he controlled and Mr. Bayyouk's securities account. In order to demonstrate that Defendant had an significant interest in the account, and to support the inference that Mr. Bayyouk was conducting trades on Defendant's behalf, it is relevant that the amounts of money transferred were substantial sums. Further, the underlying records, the admissibility of which Defendant does not challenge, would similarly show the amounts of money involved, and would be no less indicative of Defendant's wealth. Given the importance of the evidence summarized in this chart, the Court finds that any possible unfair prejudice from the suggestion that Defendant is wealthy is insignificant compared to its significant probative value.

2.  Objections to Exhibits 82 and 78

Exhibits 82 and 78 both summarize evidence regarding the trading activities of Michael Kara, Karim Bayyouk, and Defendant. Exhibit 82 pertains to the securities transactions that are the subject of the charges in this case, while Exhibit 78 pertains to other securities. Each chart contains information organized under the following headings:

- Company
- Description of Citigroup Involvement
- Date of Contact MAHER KARA to MOUNIR KARA
- Date of Contact MOUNIR KARA to SALMAN
- Date of Contact SALMAN to K. BAYYOUK
- Date KARA into Position
- Date K. BAYYOUK into Position
- Type of Position
- Date of Public Announcement

10

1    •    Date left Position

2    •    Net Profit (Loss)

3    Unlike the above exhibits, these charts do more than provide a neutral summary of

4    voluminous and complicated underlying documents that may easily be referenced for verification.

5    Some of the information contained in these charts may be verified by looking to underlying

6    documents (such as the dates that Kara and Bayyouk first traded the stocks in question), but others

7    will have to be established at trial through the testimony of witnesses, and may be the subject of

8    conflicting evidence.  For example, the chart presents a date of contact between the various parties

9    for each company.  Presenting the evidence in this fashion does more than indicate based on phone

10   records that the parties in question spoke on the phone on a given date, it suggests that the content of

11   this conversation included a tip regarding inside information relevant to the company in question.

12   Defendant notes that "the government's investigative materials indicate that those involved were not

13   totally sure about the dates of the telephone calls in question," and argues that "[h]ighlighting

14   testimony that may or may not be accurate in this way, on this government chart, is improper and

15   prejudicial."  *See also* Docket No. 163 (Defendant expands upon this argument in his reply to

16   unrelated motion in limine, quoting sections of grand jury testimony indicating the uncertainty about

17   the dates of the relevant telephone calls).

18   Defendant also objects that the titles of the charts:  "Summary Regarding Michael Kara and

19   Bassam Salman / Karim Bayyouk Trading in" the various securities is prejudicial because the titles

20   present as given facts that the government is required to prove at trial, namely, that Defendant

21   caused and was an interested party in Mr. Bayyouk's trading.  In its reply, the government agrees to

22   re-title the exhibits to omit Defendant's name.  Docket No. 166 at 3.

23   The Court concludes that these charts go beyond a neutral summary of voluminous

24   underlying documents and present as fact conclusions that require an inferential leap from the

25   underlying documents.  As such, they are not admissible evidence under F.R.E. 1006.  While the

26   government may show these documents to the jury as a demonstrative during trial to illustrate their

27   theory of the case, these charts may not be admitted into evidence.  Should the government remove

28   the column titled "Description of Citigroup Involvement," and the three "Date of Contact"columns,

this would address the above objections, and the remaining information would be admissible pursuant to F.R.E. 1006.

The government's fourth motion in limine is therefore **GRANTED** in part and **DENIED** in part.

E.      Motion in Limine No. 5:  Evidence of Trades Not Charged

The government's fifth motion in limine seeks admission of evidence related to securities trades by Defendant and Karim Bayyouk other than those that form the basis for the indictment. Docket No. 72.  Though the indictment charges insider trading only with regards to four securities, the government seeks to introduce evidence of trading by the Defendant, Karim Bayyouk, and Michael Kara with respect to 31 other securities.  *See* Gov. Ex. 87.  It argues that such evidence is admissible under Rule 404(b).  Defendant initially filed a timely statement of non-opposition to this motion, indicating that he further stipulated that the business records in question are admissible under F.R.E. 803(6).  Docket No. 153.  Then, on August 23, 2013, days before the pre-trial conference and over a week late, Defendant filed what was titled a "*Corrected* Opposition to Government's Motion in Limine No. 5."  Docket No. 173.  This title is, of course, in accurate; Defendant had not previously opposed this motion in limine.  Further, this opposition was filed ten days after the deadline for oppositions to motions in limine, which was August 13, 2013.  Docket No. 106.  When this Court granted Defendant's motion to continue the trial on June 27, 2013, it made abundantly clear that the deadlines associated with pre-trial filings were non-negotiable:

> And I would need all of the filings by the 13th.  Now, I know the Government's already filed motions in limine and filed a number things.  And, Ms. Shifman, you have not filed anything.
>
> . . .
>
> And I do want to make it clear that that's an absolute deadline.  I've got to have this stuff by the 13th.  And if it's not in, it's not going to be included.  So if you have any motions in limine or any opposition motions in limine, any proposed jury instructions, objections, and stuff, if it's not in, I can't let this slip any further.

Docket No. 104 at 33-34.  Defense counsel responded, "I understand, Your Honor."  *Id.* at 34.  As this opposition was filed ten days late with no explanation, and after Defendant had previously

indicated that he would not oppose this motion in limine, the Court declines to consider Defendant's objection.

In the alternative, however, this Court finds that even if it were to consider Defendant's late-filed objection, it would reject Defendant's arguments on the merits. Defendant argues that evidence of these other trades is inadmissible evidence of a previous crime, wrong, or other act used to prove Defendant's character. *See* F.R.E. 404(b)(1). Rule 404(b)(2), however, provides that evidence of other crimes, wrongs, or other acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The Ninth Circuit, discussing the relationship between the two parts of this rule, has noted that "[t]he Rule embodies an inclusionary rule which admits all evidence of other crimes relevant to an issue in a trial, except that which tends to prove only criminal disposition." *United States v. Verduzco*, 373 F.3d 1022, 1026-27 (9th Cir. 2004).

> In making admissibility decisions, the court will admit Rule 404(b) evidence if (1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged.

*Id.* at 1027. Here, the prior trades are relevant to prove the existence of an insider trading scheme, and to show that the parallel trading activity with regards to the charged securities is not mere coincidence. The other trades took place during roughly the same time period, and are thus not overly remote. There does not appear to be any dispute that the government has sufficient evidence to show that Defendant made the other trades. Finally, the other trades are directly parallel to the conduct that forms the basis for the charges against Defendant in this case. The Court therefore finds that this evidence comes squarely within Rule 404(b)(2) and is admissible. The Court finds that this evidence is highly probative for the above reasons, and thus also rejects Defendant's argument that it should be excluded pursuant to F.R.E. 403.

The government's fifth motion in limine is therefore **GRANTED**.

# VI.   DEFENDANTS' MOTIONS IN LIMINE

A.    Motion in Limine No. 1:  Use of Terms "Tipper" and "Tippee"

Defendant's first motion in limine seeks to bar the government from referring to any witness or individual as a "tipper" or "tippee," arguing that such terminology is prejudicial because it implies that the individual in question has engaged in insider trading.  Docket No. 132.  The government opposes, arguing that these terms do not necessarily carry the connotation of unlawful behavior, and that avoiding their use would be awkward and confusing.  Docket No. 142.  The Court recently considered this exact issue in the related case of *United States v. Bayyouk*, CR12-0420. There, the Court ruled that:

> The government is not prohibited from referring to any individual as a "tippee."  However, prior to using this term for the first time, the government is directed to provide a neutral definition of the word that indicates that the term simply refers to individuals who have received certain information, and that the term "tippee" itself does not necessarily indicate that the individual has acted unlawfully.

*Id.* Docket No. 91 at 4.  As in that case, Defendant here has cited to no case holding that the use of such terms at trial is unfairly prejudicial to a criminal defendant, and offers no authority that calls into question this Court's previous ruling.

Defendant's first motion in limine is therefore **DENIED.**  The Court will be providing the same instruction that it offered in *Bayyouk*, however, which provides a neutral definition of the terms tipper and tippee, and specifies that the terms do not necessarily indicate that the individual so described has acted unlawfully.

B.    Motion in Limine No. 2:  Charges Pending Against Bayyouk

Defendant's second motion in limine seeks to exclude reference to the pending charges of Karim Bayyouk, or to any other criminal history of Mr. Bayyouk.  Docket No. 133.  Defendant argues that such information is not relevant to any issue in this trial, and that it would be unfairly prejudicial because it could cause the jury to impute guilt to Defendant by association.  *See* F.R.E. 401, 403.

The government does not object to the exclusion of evidence of the criminal charges pending against Mr. Bayyouk, assuming Mr. Bayyouk does not testify at trial, conceding that they are not

14

otherwise relevant.  Docket No. 143.  If Mr. Bayyouk does testify, however, the government

reserves the right to cross-examine him on all issues related to his credibility, including the criminal

charges pending against him for obstruction of justice.

The government does contend, however, that it should not be barred from introducing

evidence or argument regarding the underlying actions relating to the charges against Mr. Bayyouk.

The government argues that, consistent with its third motion in limine above, evidence that Mr.

Bayyouk made false statements to the S.E.C. is relevant to demonstrate that he was aware that the

trades in question were based on inside information, and thus to suggest that Defendant was also

aware of this fact.

The Court finds that while the fact that criminal charges have been brought against Mr.

Bayyouk is irrelevant, the underlying activities that form the basis for those charges are relevant to

this action.  Defendant's second motion in limine is therefore **GRANTED** and the government may

not introduce evidence of the fact that there are criminal charges pending against Mr. Bayyouk.

This does not, however, bar the government from introducing evidence or argument regarding Mr.

Bayyouk's activities that formed the basis for such charges, where such evidence or argument is

otherwise relevant and admissible.  Additionally, if Mr. Bayyouk is convicted of the charge against

him, and if he subsequently testifies in this trial, the Court will permit the government to introduce

evidence of his conviction for impeachment purposes.  F.R.E. 609.

C.     Motion in Limine No. 3:  Michael Kara's Plea Agreement and Testimony

Defendant's third motion in limine seeks to exclude certain hearsay testimony from the

government's witness Michael Kara consistent with statements made in connection with Mr. Kara's

plea agreement.  Docket No. 134.  Specifically, he objects to Mr. Kara's anticipated testimony that

he spoke to Defendant about the SEC investigation, and that Defendant told Mr. Kara that he traded

on the confidential information through "his brother-in-law in Detroit" (Mr. Bayyouk) in order to

protect the various individuals involved in the scheme.  It was not entirely clear from the original

motion whether Defendant is objecting to Mr. Kara's testimony at trial about his conversations with

Defendant, or whether Defendant was objecting to the introduction of Mr. Kara's plea agreement

into evidence.  In his reply, Defendant clarifies that he is objecting to introduction of the plea

agreements, and argues that the government has identified no hearsay exception under which statements in the plea agreements would be admissible.

The Court agrees that any factual statements in the plea agreement are inadmissible hearsay. This does not, of course, mean that Mr. Kara is prohibited from offering testimony about statements Defendant made to Mr. Kara, as any such evidence is clearly admissible as a party admission under F.R.E. 801(d)(2)(A).

Defendant's third motion in limine is therefore **GRANTED** in part. This ruling also applies to the plea agreements and deferred prosecution agreements of the other cooperating witnesses (Azar, Mardini, and Maher Kara).

D.    Motion in Limine No. 4:  Objections to Exhibits

Defendant's fourth motion in limine raises three unrelated objections to three of the government's exhibits.  Docket No. 135.

1.    Exhibit 1:  Organizational Chart

First, Defendant objects to the government's Exhibit 1, which is an "organizational chart" showing the relationship between Defendant, Maher Kara, Michael Kara, Joseph Azar, Nasser Mardini, Mazen Mardini, Karim Bayyouk, and Hani Bayyouk.  Defendant objects that the chart is incomplete because it does not include Emile Jilwan, Safwan Hito, and Zahi Haddad, who also received trading tips from Michael Kara.  The government opposes, arguing that the chart is intended to reflect only "the persons who knowingly traded securities or caused securities to be traded based on material, nonpublic or 'inside' information."  Docket No. 145 at 2.

If the parties are able to stipulate to adding the additional parties Defendant cites, the Court will allow the chart to be admitted so the jury has a reference that will help them understand the government's theory of the relationship between the various individuals.  Otherwise, however, the government may use the chart as a demonstrative, but it may not be admitted into evidence, as it merely illustrates the government's theory of the case, and is not itself evidence.

2.    Exhibit 87:  Chart of Securities Traded

Defendant objects to one of the data points included in the government's Exhibit 87.  That exhibit is a table displaying information about various securities, and the dates that Mr. Bayyouk,

Mr. Kara, and Defendant each first made trades involving these securities. Defendant specifically objects to line 35 of the table, as it displays information on a security traded by Mr. Bayyouk that neither Defendant nor Mr. Kara ever traded. In its opposition, the government agrees to remove line 35 from the table. Docket No. 145 at 2.

3.    Exhibit 93:  Photograph of House

Defendant objects to the introduction of the government's Exhibit 93, which is a picture of his house. The government indicates that it intends to introduce evidence that the house was purchased in part with funds traceable to Mr. Bayyouk's Comerica securities brokerage account. Docket No. 145 at 2-3. The government argues that the photograph of the house is relevant to show that Defendant's motive to commit the crimes in question was greed.

The Court finds, however, that this photograph is of minimal probative value. The government has ample other evidence relating to motive in this case, and intends to introduce evidence of the money Defendant made from the trades in question, and evidence that he used the money to purchase a house. The photograph of the house thus offers little of additional value. As such, the Court finds that the minimal probative value of the photograph is substantially outweighed by the danger of unfair prejudice, and therefore excludes the photograph pursuant to F.R.E. 403.

Defendant's fourth motion in limine is therefore **GRANTED**.

E.    Motion in Limine No. 5:  Defendant's Interview with the SEC

Defendant's fifth motion in limine seeks exclusion of the transcript of his interview with the SEC. Docket No. 137; Gov. Ex. 88. Defendant argues that much of the information in the transcript is irrelevant, and that its introduction is improper and prejudicial because he repeatedly invokes his privilege against self incrimination during the course of the interview. The government agrees that redaction is proper for the portions of the transcript where Defendant invokes his privilege against self incrimination, and submits a proposed redacted version of the transcript. Docket No. 146, 159. Defendant's reply raises objections to certain sections of the redacted transcript that contain irrelevant information, such as his wife's maiden name. Docket No. 163 at 8-9. He further requests that the entire transcript should be re-typed, so that the redactions will not be obvious to the jury, and so that the Bates stamp numbers are omitted.

Defendant filed a proposed redacted version of this exhibit on August 26, 2013. Docket No. 178. The parties are directed to meet and confer to reach an agreement about the version of this transcript that will be admitted into evidence, and to any explanatory description to be given to the jury.

Defendant has also filed a notice reserving his right to bring additional motions in limine to exclude witnesses or evidence, including rebuttal witnesses or newly advanced evidence. Docket No. 138. **NOTE: The Court will not entertain any further MILs unless they concern newly identified witnesses or evidence such that Defendant could not have foreseen the issue.**

## VII. WITNESSES & EXHIBITS

A. Government's Witnesses and Exhibits

The government has submitted a witness list identifying 18 individuals but reserving its right to add to or modify the witness list. Docket No. 82. The government has filed an amended list of 413 exhibits. Docket No. 141. Defendant has filed objections to both. Docket Nos. 168, 169. The majority of Defendant's objections merely restate issues raised in his motions in limine. In addition, he also raises the following objections.

1. Witnesses Pedraza, Patterson, and Fuller

Defendant objects to the testimony of the government's witnesses Richard Pedraza, Douglas Patterson, and Richard Fuller. Docket No. 168. The government's witness list describes all three as "victim." Docket No. 82 at 3. Defendant acknowledges that it is not entirely clear what the testimony of these witnesses will be, but argues nevertheless that it will be irrelevant and prejudicial, and thus asks that their testimony be excluded pursuant to F.R.E. 402, 403. He argues that whether another individual suffered pecuniary harm because of the alleged insider trading is not relevant to any of the elements of the crimes here.

The government indicates that these three witnesses are all representatives of counter-party investors – that is, entities that sold certain of the relevant Biosite options that Defendant purchased

through Mr. Bayyouk.[2]  Docket No. 175.  The government intends to call these witnesses to testify to the following issues:  (1) whether, at the time the counter-party sold the relevant option, the news of Biosite's acquisition by Beckman Colter was public information; (2) whether this information, had it been public, would have been "material" and affected the counter-party's trading decision; and (3) whether the options in question were sold and purchased on a national securities exchange using instrumentalities of interstate commerce.  The government thus notes that these individuals are not being called as witnesses to testify to any loss that they sustained, but to testify to elements of the charges against Defendant:  the non-public nature of the information, its materiality, and the fact that the options were traded on a national exchange using instrumentalities of interstate commerce.  The government also represented that one of these witnesses would also testify to the fact that he found some of the trading patterns he observed suspicious, and raised these concerns to his superiors.

As the government has indicated that it intends to offer the testimony of these witnesses on issues that are relevant to the charges against Defendant, Defendant's objection to their testimony is **OVERRULED.**  The government is, however, limited under F.R.E. 403 to calling one witness from this group.  The Court reserves ruling on whether testimony about the witness' suspicions regarding the trading activity is relevant.

2.        Objections to Exhibits

Defendant raised a number of objections to the government's exhibits.   The Court's rulings on these objections are as follows:

Exhibit 2:                            OVERRULED.  *See* Government MIL 4.

Exhibits 21-24:                    OVERRULED.  Relevant to show fiduciary duty; jury unlikely to be confused by definition of insider trading in code of conduct given Court's instructions.

---

[2] The government further indicates that it intends to call only one of these witnesses, and that it intends to file an amended witness list replacing Mr. Pedraza with Frank Krepelka, a representative of the same counter-party investor.

| | | |
|---|---|---|
| Exhibits 29, 35, 85-86: | Admissible, but factual statements must be redacted. *See* Government MIL 2. | |
| Exhibits 43, 49, 51, 54: | OVERRULED.  Relevant to show materiality. | |
| Exhibits 67-68: | OVERRULED.  To be redacted consistent with Government MIL 3. | |
| Exhibit 70: | OVERRULED.  *See* Government MIL 4 & 5. | |
| Exhibit 73: | Withdrawn by the government. | |
| Exhibits 78, 82: | SUSTAINED.  *See* Government MIL 4. | |
| Exhibit 79: | OVERRULED.  *See* Government MIL 4 & 5. | |
| Exhibit 87: | OVERRULED.  The government will omit line 35. | |
| Exhibit 88: | *See* Defendant MIL 5.  The parties shall meet and confer about appropriate redactions. | |
| Exhibit 92: | OVERRULED.  *See* Government MIL 4; Defendant MIL 4 | |
| Exhibit 93: | SUSTAINED.  F.R.E. 403. | |
| Exhibits 168-169: | OVERRULED.  Relevant to materiality, existence of insider trading scheme. | |
| Exhibits 183,186, 188, 189: | OVERRULED.  *See* Government MIL 2. | |
| Exhibits 393-396, 399-400: | OVERRULED.  *See* Government MIL 5. | |

The government provided the Court and Defendant with several new exhibits on August 26, 2013.  Defendant shall provide the government with any objections to these exhibits by 4:00 p.m. on Thursday, August 29, 2013.  The government shall then file a document with Defendant's objections and the government's responses by no later than noon on Friday, August 30, 2013.

        3.        Cut Off for Production of Documents

On August 26, 2013, Defendant filed an addendum to his pre-trial conference statement in which he objected to the fact that the government was continuing to produce to him significant numbers of documents.  Docket No. 180.  At the pre-trial conference hearing, the parties disputed how many of these documents were newly created, and how many had previously been produced.  In

order to provide Defendant with a fair opportunity to prepare for trial, the government must produce all documents subject to production currently in its possession by no later than Friday, August 30, 2013. Any documents produced after this date without good cause will be subject to exclusion.

Defendant also objected that some records had not yet been produced in response to this Court's earlier orders regarding the production of certain privileged documents pertaining to the mental health history of witness Michael Kara. The Court noted that to the degree Defendant was referring to the attorney-client privileged document referenced in this Court's August 23, 2013 order, this document was due by the end of the day August 28, 2013, the day of the pre-trial conference. To the degree that Defendant was referring to documents relevant to Mr. Kara's mental health condition since May 2010, this Court noted that all records pertaining to this issue were due to be produced by no later than August 2, 2013, per this Court's July 25, 2013 order. The Court directed the government to ensure that any such documents that had not yet been produced were produced by the end of the day.

Later the day of the pre-trial conference, counsel for Mr. Kara contacted the Court indicating that redacted versions of certain responsive documents had been produced to Defendant. At the same time, Mr. Kara's counsel submitted three documents for *in camera* review, seeking guidance on whether one came within the scope of the Court's order, and on whether the redactions made to the other two were acceptable to the Court. The Court issued an order under seal directing Mr. Kara's counsel to provide certain additional disclosures of previously redacted materials.

B.    Defendant's Witnesses and Exhibits

Defendant has not yet filed an exhibit or witness list with the Court. At the pre-trial conference, Defendant indicated that he might call Dr. Bruce Victor or one or more as yet unidentified character witnesses, and that he had no exhibits that he currently intended to use at trial. Defendant identified no other potential witnesses.

## VIII.    JURY VOIR DIRE

Both parties have submitted proposed questions for voir dire. Docket No. 84, 155. The Court intends to begin voir dire by asking the jurors for the following information:

1.    Name

2.     City of Residence

3.     Occupational Status

4.     Educational Background

5.     Organizations

6.     Hobbies

7.     Marital Status

8.     Spouse's Occupation

9.     Children (including ages)

10.     If a Juror on Another Case

11.     If Ever a Grand Juror

12.     If Ever in the Military

At the pre-trial conference, the government indicated that it would be satisfied if the Court used the voir dire questions used in the related case *United States v. Bayyouk*, 12-cr-0420. The Court will therefore ask the following questions:

1.     Do any of you know anyone else on this jury panel? If yes, please explain.

2.     You may hear testimony in this case from law enforcement officers and government employees; specifically, agents of the Federal Bureau of Investigation, which is commonly known as the FBI, and employees of the United States Securities and Exchange Commission, which is commonly known as the SEC. Do you have any opinion regarding the FBI, the SEC, or law enforcement officials in general, which would prevent you from serving as a fair and impartial juror in this case?

3.     Have you or any of your friends, relatives, acquaintances or business associates ever been employed by any law enforcement agencies (including local, county, state, or federal law enforcement, the United States Department of Justice, the FBI, or the SEC)?

4.     Have any of you or your relatives or close friends been a party to any legal action or proceeding (including but not limited to criminal matters) involving the United

States, the FBI, the SEC, or other federal, state, or local law enforcement agency?  If so,

    a.    What was the nature of the action?

    b.    Was the matter resolved satisfactorily, in your opinion?

    c.    Do you feel the government representatives acted fairly in resolving the matter?

    d.    Does this experience cause you to have any feelings or opinions for or against the United States in this case?

5.    Have you or any relative or close friend ever been a victim of any crime? If so,

    a.    What kind of crime was it?

    b.    Would that affect your judgment as a juror in this case?

6.    Do you belong to any groups taking an advocacy position in an area related to law enforcement or gun control?

7.    You may hear testimony regarding the following companies and, in particular, securities that some of them may have issued:  Citigroup or Citibank; Bone Care International; Andrx Corporation; United Surgical Partners, Inc. or USPI; Biosite Incorporated; and Beckman Coulter.  Have any of you worked for and/or had dealings with any of these companies or entities or invested in securities issued by any of these companies?  If so, would that prevent you from serving as a fair and impartial juror in this particular case?

8.    Do members of your family or others close to you trade actively in the stock market?

9.    Is there anything about your stock market investing that would interfere with being a fair and impartial juror in this particular case?

10.    You may hear testimony from one or more witnesses who committed certain crimes but who are cooperating with the government in the hope of receiving more lenient treatment. Do you have strong views about cooperating witnesses that will prevent them from keeping an open mind and weighing their testimony as you would any other witness?

11. Would you tend to believe a witness who was testifying on behalf of law enforcement or government more than another witness because of that connection with law enforcement or government?

12. Under our Constitution, a defendant is presumed innocent, meaning that the government has to prove that the defendant is guilty beyond a reasonable doubt, and the defendant has no obligation to testify or put on any evidence. Do you have any difficulty with the fact that a defendant in a criminal case (such as Mr. Bayyouk) is not required to testify because the burden of proof rests with the prosecution?

13. Are you comfortable with the rule of law that Mr. Bayyouk is presumed innocent unless and until the prosecution proves him guilty beyond a reasonable doubt?

14. If selected as a juror you will be asked to evaluate the evidence in the case without being influenced in any way by the race or ethnic origin of the defendant, the attorneys, the witnesses, and the government agents? Do you have any reservations whatsoever about your ability to do that?

15. Do you understand that as a juror you must accept and apply the law as it is explained to you by the Court – even if you believe the law is or should be different? Do you have any difficulty with this concept that would prevent you from serving as an impartial juror in this case?

16. You should not speculate about the possible punishment if the defendant is found guilty. While it is natural to wonder what might happen as a result of your verdict, will you be able to perform your duty as a juror without regard to the possible punishment of the defendant if he is found guilty?

17. It is your duty as a juror to listen to the opinions and points of view of the other members of the jury. Would any of you refuse to listen to a fellow juror who disagreed with you?

18. It is also your duty as a juror to express your opinion or point of view regarding the evidence to the other members of the jury. Is there anyone who would be unwilling

| | |
|---|---|
| 1 | to speak up and try to persuade other members of the jury who disagreed with your |
| 2 | view of the evidence? |
| 3 | 19.   Have any of you seen or heard anything outside of this courthouse, or in the corridors |
| 4 | of this building, or in this courtroom that might have any influence on your verdict in |
| 5 | this case? |
| 6 | 20.   Knowing what you now know about this case, do you have any reservations about |
| 7 | your ability to hear the evidence, deliberate and return a fair and impartial verdict? |
| 8 | 21.   Is there anything about yourself or your beliefs and attitudes that have not yet been |
| 9 | discussed that would prevent you from serving as a fair and impartial juror in this |
| 10 | case? |

The Court will additionally ask questions 1 and 4 from Defendant's proposed list.

Each party will be provided additional time (20 minutes) to conduct its own voir dire.

## IX.   JURY INSTRUCTIONS & JURY VERDICT FORM

The parties have each submitted proposed jury instructions. Docket Nos. 80, 156. The Court shall file shortly hereafter proposed jury instructions. **The parties shall provide comments on the instructions on a date to be specified**. On September 6, 2013, the parties shall submit a list of any stipulated facts to be read to the jury with the initial instructions.

The government has filed a proposed verdict form. Docket No. 79. Defendants shall file any objections by September 6, 2013.

This order disposes of Docket Nos. 62, 63, 65, 70, 72, 132, 133, 134, 135, 137.


IT IS SO ORDERED.


Dated: September 3, 2013

_____
EDWARD M. CHEN
United States District Judge